# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN PARK, | CASE NO. 12cv1380-LAB (JMA) |
| Plaintiff, | **ORDER GRANTING IN PART MOTION TO DISMISS** |
| vs. | |
| WEBLOYALTY.COM, INC., | **[DOCKET NUMBERS 27 AND 28.]** |
| Defendant. | |

Defendant Webloyalty.com, Inc. has filed a motion to dismiss. Because the motion was over-length, Webloyalty also filed a motion for leave to file excessive pages. The unopposed motion for leave to file excessive pages is **GRANTED**, and the motion to dismiss is accepted as filed.

**I. Introduction & Background**

On May 19, 2009, Plaintiff Kevin Park purchased a gift certificate online from Gamestop.com. After entering his credit card information, Park saw an offer for a coupon to save on his next purchase. Park clicked on the offer, and was directed to a new window. This new window provided the details of the coupon offer and explained that by providing an email address the customer would be agreeing to a subscription to a membership-fee based program known as Complete Savings. Park claims he was not aware of the membership program he was signing up for, and assumed it was part of his GameStop purchase. The enrollment page asked him to provide his email address twice and click an acceptance

button. By clicking this acceptance button, Park subscribed to a fee-based membership program known as Complete Savings, operated by Webloyalty. Park never re-entered his billing information for this subscription; rather, the data was shared by a method known as "data pass." The first charge by Webloyalty was made one month later, on June 19, 2009.

Park alleges that Webloyalty obtained his billing information directly from Gamestop.com through the "data pass" process. Park claims that he never intended to join any membership program, and was not even aware that he had been redirected away from the website Gamestop.com. Park says that in April of 2011 he discovered unauthorized charges to his bank account totaling $264. These were the charges made by Webloyalty. He requested a refund, and Webloyalty granted him only a partial refund of $48.

Park has brought this putative class action, with the putative class consisting of all persons who did not directly provide their billing information to Webloyalty, but who were charged for a subscription based program at any time since December 29, 2010. A different putative class action, *Berry v. Webloyalty.com, Inc.*, 10cv1358-H (CAB) was filed in this District on June 25, 2010, and Park says he was a member of the putative class in that case. The *Berry* decision was vacated on appeal, because Webloyalty had given the plaintiff a full refund, resulting in his lacking a cognizable injury. *Berry v. Webloyalty.com, Inc.*, 517 Fed. Appx. 581 (9th Cir. 2013). This deprived him of standing, and the court of jurisdiction. *Id*. at 582.

The original complaint was dismissed for failure to allege jurisdictional facts. The Second Amended Complaint (SAC) is the operative pleading. Webloyalty has moved to dismiss the SAC for failure to state a claim. In support of its motion, Webloyalty asks the Court to take judicial notice of web pages and disclosures referred to in the SAC.

**II. Discussion**

**A. Legal Standards**

A Rule12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes

them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003) (citations and quotation marks omitted).

Under Fed. R. Civ. P. 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," is required, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555. "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id*. at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *See id.* at 1141 n.5. But the Court may consider judicially noticeable facts, *see Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007), as well as  "documents whose contents are alleged in a complaint and whose authenticity no party questions," even if they are not attached to the pleading. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

/ / /

/ / /

12cv1380

1

**B. Judicial Notice**

Under Fed. R. Evid. 201(b), the Court can take judicial notice of facts not subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir.2001). Under Fed. R. Evid. 201(d), the Court must take notice if requested by a party and if supplied with the necessary information. But Park has opposed the request, and seeks discovery to confirm whether the documents are authentic and accurate. By their nature, the original documents are not likely to be within Park's control.  Because the documents Webloyalty asks the Court to take notice of are not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), judicial notice is inappropriate here. Nor may the Court treat these documents as the ones whose contents are alleged in the SAC.

Park asks the Court to take judicial notice of two staff reports prepared for the chair of the U.S. Senate Committee on Commerce, Science, and Transportation regarding industry practices. Congressional acts and records are noticeable, and the reports may be relevant to Congressional purpose in enacting the Restore Online Shoppers' Confidence Act, or to show the government was concerned about the business practices the reports detail. The facts and conclusions set forth in the reports, however, are subject to dispute; that dispute is at the heart of this case. *See In re Easysaver Rewards Litigation*, 737 F. Supp. 2d 1159, 1171 (S.D.Cal., 2010) (taking notice of the Senate investigation and citing these same committee reports, but declining to consider the findings within the reports).  The Court therefore takes notice of the reports, but only for purposes of showing that the Senate conducted an investigation and considered these matters, and not for purposes of showing whether the interaction between Webloyalty and Park—as well as the putative class members—is actionable.  The fact that a Senate committee conducted an investigation, in other words, does not deprive Webloyalty of its day in court.

The fact that the reports are alleged in the SAC, and the Court's taking judicial notice of the reports do not relieve Park of his obligation to plead facts to establish his claim. The / / /

reports speak of what the authors believe happened to consumers in general; they do not purport to say what happened to Park.

**C. EFTA claim**

Park claims that the charges made by Webloyalty were "unauthorized electronic funds transfers," as that term is defined in the Electronic Funds Transfer Act 15 U.S.C. § 1693a(11). According the EFTA, "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). Park claims that the input of his email address was not a sufficient authorization under EFTA, and therefore the charges made by Webloyalty were unlawful.

Webloyalty responds with two main arguments. First, it argues that Park has failed to state a claim for which relief may be granted because the enrollment page, which Park referenced in the SAC, disclosed the financial details of the enrollment seven times, and explicitly stated that by entering his email address twice he would be authorizing the charges, and a valid authorization would preclude Park's EFTA claims. Second, they argue that Park's EFTA claim is time-barred because it was brought after the expiration of the one-year statute of limitations.

**1. Failure to State a Claim**

Webloyalty's first argument is that Park has failed to state a claim under EFTA because Webloyalty's enrollment page fully disclosed all details of the financial transaction, and Park provided a valid authorization by inputting his email address twice. Webloyalty relies on *Berry*, in which it made almost identical disclosures and the court held that a plaintiff's input of his email into a nearly identical form constituted a valid authorization under the EFTA. *Berry v. Webloyalty*, 2011 WL 1375665 (S.D. Cal., Apr. 11, 2011). Park argues that *Berry* lacks any precedential value because of its vacatur. But because it was vacated on other grounds, it remains persuasive precedent.

In general, the question of whether a business practice is deceptive is a question of fact. *See Castagnola v. Hewlett-Packard Co.*, 2012 WL 2159385, at *7 (N.D.Cal., June 13,

1   2012). But a motion to dismiss can be granted if there is no likelihood a reasonable

2   consumer would be deceived. *Id.* (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir.

3   1995)).

4       In *Berry*, the plaintiff was directed to an enrollment page operated by Webloyalty that

5   is similar to the one Webloyalty has asked the Court to notice. The only differences between

6   this page and the page Park was directed to were immaterial specifics, such as the value of

7   the coupon offered as an incentive to sign up. The court in *Berry* held that the plaintiff's input

8   of his email address constituted a valid authorization under the EFTA.  *Id.* at *7 ("The Court

9   concludes that Plaintiff Berry's entry of his email address twice and clicking on 'YES'

10  constitutes authorization given the several disclosures made on the enrollment page").

11  Courts in the past have come to the same conclusion that an email can serve as an

12  authorization as long as a clear disclosure of terms is made. *See In re Vistaprint Corp*

13  *Marketing and Sales Practice Litigation*, 2009 WL 2884727 at *9 (S.D. Texas 2009) (plaintiffs

14  typed their email addresses into the spaces provided on defendants' web pages, thereby

15  authorizing defendants to "charge/debit [their] account according to the Offer Details . . . [so]

16  the EFTA claim must be dismissed"), *aff'd sub nom. Bott v. Vistaprint USA, Inc.*, 392 Fed.

17  Appx. 327 (5th Cir. 2010)).

18      To be sure, enrolling consumers in such a program without their knowledge or

19  consent would be unlawful. *See, e.g., Marsh v. First Bank of Delaware*, 2014 WL 554553,

20  at *2 (N.D.Cal., Feb. 7, 2014). But, assuming the exhibit depicting the web page is authentic

21  and accurate, the core question is whether Webloyalty's disclosures were sufficient to put

22  Park on notice both that he was subscribing to a fee-based membership and also that his

23  email would serve as an authorization to charge his debit card. They undoubtedly were.

24      As noted above, the Court has not taken judicial notice of Webloyalty's exhibits. But

25  a discussion of those exhibits is still helpful, because they provide tangible examples of

26  documents Webloyalty argues the SAC is (or could be) describing.  The enrollment page

27  Webloyalty points to (Mot. to Dismiss, Pipkin Decl., Ex. A) discloses the fact that subscription

28  / / /

1  will require a monthly fee; in fact, this is mentioned seven times. Also, the paragraph directly

2  above the box where the customer is to input his email address reads:

3      "By entering my email address as my electronic signature and clicking
        YES, I have read and agree to the Offer and Billing Details and authorize
4      Gamestop to securely transfer my name, address and credit or debit card
        information to Complete Savings for billing and benefit processing."
5

6  The details are posted directly to the left of this, and are labeled "Offer and Billing Details."

7  This is a clear and unambiguous statement that by entering an email address, the customer

8  is authorizing a charge to his or her debit card. Under *Vistaprint* and *Berry*, an email can

9  serve as an authorization for the purposes of the EFTA; therefore Webloyalty's charges were

10 not "unauthorized electronic fund transfers" under the Act. Park alleges Webloyalty's web

11 page is deceptive and misleading, but these allegations are conclusory, and he makes no

12 effort to explain how or why the page was misleading. It is also worth mentioning that

13 although Park alleges he did not see or notice the warnings in the exhibits, the real question

14 is whether they were there. It is not enough merely to show that he did not read them.

15     Park's other argument is that there can be deception even when express disclosures

16 are made, and thus the screenshot of the enrollment page is not dispositive. He cites various

17 cases for the principle that a motion to dismiss is improper when there are questions of fact

18 regarding the context of a web page that could be deceptive, even when express disclosures

19 are made. He has failed, however, in his pleadings to explain what deceptive practice

20 Webloyalty has used to trick customers into authorizing a debit funds transfer without

21 reading the express disclosures. Merely suggesting the hypothetical possibility that

22 something might have rendered the disclosures insufficient does not meet the pleading

23 standard. Nor would it meet the standard for pleading fraud under Fed. R. Civ. P. 9(b).

24     The main helpfulness of this exhibit is that it points out how spotty and conclusory the

25 SAC's allegations are. Accepting as true all the SAC's allegations, the exhibit Webloyalty

26 points to could still be the one Park looked at when he enrolled; Park himself is unsure

27 whether it is. But if it is, his claim fails. A well-pleaded complaint would foreclose that

28 / / /

possibility.  Park is responsible for pleading facts that, if true, would show he is entitled to relief, and not merely that it is possible he is entitled to relief. *See Iqbal*, 556 U.S. at 679.

### 2. Statute of Limitations

Webloyalty also argues that Park's EFTA claims are barred by the statute of limitations. EFTA has a one-year statute of limitations. 15 U.S.C. § 1693m(g) ("[A]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation.") Park's debit card was first charged on June 19, 2009. Ordinarily, this would mean that the statute of limitations would have barred any claim brought after June 19, 2010. Park argues, however, that *Berry v. Webloyalty.com*, another class action case that he was a putative member of, tolled the statute of limitations under principles set forth in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). The problem, however, is that *Berry* was filed June 25, 2010; thus, it began after the statute of limitations had already run, and tolling would be of no help to him. He also cites a District of Connecticut case, *L. S. v. Webloyalty.com, Inc.,* et al., 10cv1372-CSH (D.Conn, filed August 27, 2010), but since that was filed even later than *Berry*, it does not help him either.

Park argues that the discovery rule also applies to his claim, and prevented the statute of limitations from running until he discovered the charge. He argues that Webloyalty's "deceptive practices" caused his delay in discovering both the misuse of his billing information and the charges to his debit card.

As discussed above, Park might have known all material facts on May 19, 2009 when he first viewed the enrollment page. If he did not, the SAC has not adequately pleaded facts to show how or why not.  Even disregarding this, he at the very least had the opportunity to see the charges on his first bank statement on June 19, 2010 when the first charge was made. Park, however, argues that Webloyalty concealed its wrongdoing by "intentionally charg[ing] only a small amount to his account each month so that the charges could easily be overlooked." (Opp'n to Mot. to Dismiss, 21:18–20.) The charge, however, is alleged to be $12.00, and there is no allegation that it was disguised in way or that he attempted to find out what the charge was for and was somehow misled or thwarted in his efforts.

As soon as Park received the first bank statement showing the $12.00 charge, he had reason to know of the basis of his claim. That is when his EFTA claim accrued, and the statute of limitations runs from that date. *See Hexcel Corp. v. Ineos Polymers*, *Inc.*, 681 F.3d 1055, 1062–63 (9th Cir. 2012) (discussing discovery rule and fraudulent concealment doctrine).   This is true even if he did not look at his bank statement or notice the $12.00 charge.  Without any equitable tolling, the statute of limitations on Park's claims expired on June 19, 2010, and thus his EFTA claims appear to be time-barred.

### D. ECPA Claim

Park's second claim is for violation of the Electronic Communications Privacy Act (EPCA) pursuant to 18 U.S.C. § 2510. (FAC ¶¶ 77–83.) The ECPA imposes liability on any individual who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Defendant Webloyalty argues that there was no "interception" because they only receive the billing information from Gamestop after Park provided his authorization.

As discussed above, if Webloyalty's exhibits are accurate and authentic, Park's entry of his email address twice and clicking on "YES" constitutes authorization given the several disclosures made on the enrollment page. The language of the enrollment page Webloyalty points to says that, by inputting an email address, the customer would "agree to the Offer and Billing Details and authorize Gamestop.com to securely transfer my name, address and credit or debit card information to Shopper Discounts & Rewards for billing and benefit processing." As with the EFTA claim, the SAC's factual allegations do not plausibly show there was an unauthorized interception (rather than a consented-to transfer of information). This claim is subject to dismissal. *See In re Vistaprint*, 2009 WL 2884727, at *9.

ECPA claims, however, are subject to a two-year statute of limitations. 18 U.S.C. § 2520(e).  As with the EFTA claim, Park was on notice that his billing information had been shared with Webloyalty as soon as he received his bank statement. Because *Berry* and *L. S. v. Webloyalty.com* were pending during the limitations period, it appears equitable tolling could render this claim timely.

**E. Civil Theft**

Park's third claim is for civil theft under Connecticut General Statute § 52–564 and § 53(a)–119(2). (FAC ¶¶ 84–93.) Under this statute, "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Conn. Gen. Stat. § 52–564. "Any person who obtains property by false pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person." Conn. Gen. Stat. § 53(a)–119(2).

As discussed, if Webloyalty's exhibits are accurate and authentic, Park's entry of his email address twice and clicking on "YES" would constitute authorization given the disclosures made on the enrollment page. Because Park has not pleaded sufficient facts to show he did not give his authorization to be enrolled in the membership, his allegations fail to show that property was obtained under "false pretenses" with the intent to defraud. Accordingly, this claim will be dismissed as well.

**F. Remaining State Law Claims**

Park also has made claims for unjust enrichment, money had and received, conversion, and a violation of privacy. These claims are nearly identical to those asserted in *Berry*, and, as that court held, a finding that the transfer was authorized by the plaintiff would be fatal to all of these claims. *Berry*, 2011 WL 1375665 at *8-10 (holding that the plaintiff's ECPA, civil theft, unjust enrichment, money had and received, conversion, and invasion of privacy claims lacked merit because the plaintiff consented to the transaction and authorized it by email signature). As with the other claims, Park has not pleaded facts to show the transfer was unauthorized.

With regard to the statute of limitations, Webloyalty's motion argues that only claim 7, for "invasion into private matters" is subject to a one-year limitations period. For the same reasons discussed earlier, it appears that claim, though not the other state claims, is time-barred.

/ / /

/ / /

**G. ROSCA-based Claims**

Park has brought claims arising from the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. §§ 8401. While ROSCA does not itself provide for private rights of action, Park argues that Webloyalty's violations of ROSCA give rise to claims under California's Unfair Competition Law and Unfair Trade Practices Act. The violation, Park argues, consists of Webloyalty's continuing to make charges based on the earlier consent obtained through "data pass," even after ROSCA's enactment. Webloyalty argues both that ROSCA does not apply to transactions validly authorized under EFTA, and also that applying ROSCA here would amount to an improper retroactive application of that statute.

Initially, it appears that by its terms ROSCA applies to any charges made after its effective date, not just charges authorized after that date. But by its terms, ROSCA does not purport to supersede, modify, or otherwise the effect the requirements of EFTA, 15 U.S.C. § 8402(c), and it does not appear to attempt to invalidate earlier, otherwise valid charge authorizations. Although ROSCA prohibits the "data pass" method of sharing credit card information with third-party sellers, and the practice of authorizing financial transactions by email address alone, *see Lee v. Intelius Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013), the sharing of Park's data and obtaining of his authorization took place before ROSCA was effective.

**H. Partial Refund**

The SAC alleges Park was refunded $48 of the $264 he paid. (SAC, ¶ 15.) The fact that the plaintiff in *Berry* received a refund was held, on appeal, to moot that his claims. As the party invoking the Court's jurisdiction, Park bears the burden of pleading facts to establish that jurisdiction, *see Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981), and the court is obligated to confirm its jurisdiction, *sua sponte* if necessary. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir.2011) (en banc).

As *Berry* made clear, Park cannot bring any claims arising from money he was charged that was later refunded to him.   *See* 517 Fed. Appx. at 582. Park must therefore show to what extent his claims are based on charges that were not refunded. Although the

Court did not take notice of it, Webloyalty's Exhibit G suggests that Park's membership fees were refunded for December, 2010 through March, 2011. If Park agrees the refund is attributable to these four months, any of his claims arising from unauthorized charges must exclude claims that arose during those months. If he believes the refund is attributable to some other period, or represents a small partial refund attributable to the entire period, he must plead facts to show this.

**III. Conclusion and Order**

For the reasons discussed above, the Court finds the SAC does not state a claim. Although it seems unlikely Park could plead facts to establish he is entitled to tolling sufficient to rescue his time-barred claims, the Court cannot say with certainty that he could not. He may also be able to plead additional facts to meet the pleading standards for his other claims. More importantly, if the exhibits Webloyalty has proffered are authentic, Park's claims must fail. Although Park questions the authenticity of these documents, he does no more than that; all he is able to say at this point is that he doesn't know whether they represent the web pages he was shown at the time he enrolled. There are ample reasons to suspect that they are authentic, though. In *Berry*, where Park was a putative class member, the web pages' authenticity was unquestioned. Furthermore, Park knows his own mind; he is in the best position to say whether he can or cannot in good faith plead facts showing that the exhibits are not authentic. The fact that he has not done so suggests the likelihood that he cannot.

Ordinarily when a complaint is dismissed for failure to state a claim, leave to amend is granted, but it need not be granted if amendment would be futile or if the amended complaint would not withstand a motion to dismiss. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). To amend successfully, Park would need to plead facts that would show either that the exhibits Webloyalty has proffered cannot be accurate and genuine, or that for some other reason the disclosures they contain were ineffective. Because the issue of a time bar has been raised, any amended complaint would also need to show why the claims it includes are timely; otherwise, it could not withstand a motion to

1  dismiss. It must also establish that the claims are not based on any charges that were
2  refunded.

3      The motion to dismiss is **GRANTED IN PART**.  The SAC is **DISMISSED**, but without
4  prejudice and not with prejudice as requested in the motion.

5      The Court is mindful of the importance of adjudicating this case in a timely manner,
6  without needless expenditure of resources. *See* Fed. R. Civ. P. 1. In other cases, allowing
7  disputes about document authenticity to stretch out instead of resolving them early has
8  resulted in needless delay and waste of resources.  *See, e.g., In re Interstate Steel Setters,*
9  *Inc.*, 65 B.R. 312, 316 (Bankrtcy.N.D.Ill., 1986).  The Court therefore concludes that allowing
10 the case to go forward in the absence of any good faith dispute about the exhibits'
11 authenticity would be inappropriate. Rather, any dispute about the exhibits' authenticity
12 should be resolved as early as practicable.

13     To that end, Park may not amend unless he first obtains leave to do so. He may seek
14 leave to amend by filing an *ex parte* motion showing that amendment would not be futile.
15 The motion should address all defects noted in this order.  If he believes <u>limited</u> discovery
16 into the exhibits' authenticity is appropriate, he may request that in the motion and must
17 show why it is appropriate. But if he is prepared to amend immediately, he should attach his
18 proposed third amended complaint as an exhibit to his motion. The *ex parte* motion must be
19 filed within **28 days from the date this order is entered**; if it is not, the Court will assume
20 Park realizes he cannot successfully amend, and the complaint will be dismissed with
21 prejudice as to Park's claims, and without prejudice as to the putative class claims. If Park
22 moves for leave to amend, Webloyalty may file a response within 14 calendar days. Neither
23 the motion or the response may exceed twenty pages, not counting any lodged or appended
24 material.

25     **IT IS SO ORDERED**.

26 DATED:  September 29, 2014

27

28     **HONORABLE LARRY ALAN BURNS**
United States District Judge