**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN PARK,<br><br>　　　　　　　　　　Plaintiff,<br>　vs.<br>WEBLOYALTY.COM, INC.,<br><br>　　　　　　　　　　Defendant. | CASE NO. 12cv1380-LAB (JMA)<br><br>**ORDER DENYING APPLICATION FOR LEAVE TO AMEND; AND**<br><br>**ORDER OF DISMISSAL** |

On September 29, 2014, the Court dismissed Plaintiff Kevin Park's second amended complaint ("SAC") without prejudice. The order of dismissal (the "Dismissal Order") required Park, if he thought he could amend, to file an *ex parte* application showing that he could do so. Park has now moved for leave to amend, requesting oral argument. The motion also requests leave to add a new plaintiff, Madelaine Ginsberg, a Florida resident.

The Court may, but is not required to hold oral argument. *See* Civil Local Rule 7.1(d0(1) and Chamber Standing Order, § 8. Here, it does not appear that oral argument is necessary, and the Court will rule on the request without a hearing.

**Legal Standards**

Following dismissal of a complaint, leave to amend is ordinarily granted, but leave to amend need not be granted if amendment would be futile or if the amended complaint would not withstand a motion to dismiss. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298

(9th Cir. 1998). The Dismissal Order explained the defects in the SAC, and told Park what he would need to do in order to amend successfully. If the proposed third amended complaint ("TAC"), which is attached to Park's application, fails to remedy those defects, it would appear he cannot do so.

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted). Furthermore, conclusory allegations, unwarranted deductions, or unreasonable inferences need not be accepted as true. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

Under Fed. R. Civ. P. 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," is required, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id.* at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct;" they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**Discussion**

The heart of Park's claim is that he was tricked into enrolling online in a fee-based membership program. While making a purchase on the Gamestop website, he was offered a $10.00 coupon good on his next Gamestop purchase. When he clicked on the coupon, a

new window opened and Park was asked to provide his email address, which he did. He clicked on an "acceptance" button. He does not remember seeing any explanation that he was enrolling in a membership program with Webloyalty.com. He did not provide his debit card information to Webloyalty. Rather, Gamestop provided that information to Webloyalty by means of the "data pass" process, which was later prohibited by the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. U.S.C. §§ 8401, *et seq.*, although it was legal at the time the transaction was consummated. Park was charged $12.00 per month from June, 2010 until April, 2011, when he discovered the charges and obtained a partial refund.

The Court already ruled on many issues presented here, and the reasoning and analysis of its earlier order of dismissal (Docket no. 37) is incorporated by reference into this order. That reasoning is not repeated here, except as necessary for clarity.

**Proposed Amendments**

The TAC introduced only a few substantial amendments. One group of amendments alleges that Park was not looking for, and did not see disclosures regarding the nature of the transaction he was entering into. *See* TAC, ¶¶ 17–19. A second proposed amendment says Park does not know what portion of his payments the $48 refund represented, but he assumes it was attributable to the entire period. *Id.*, ¶ 20. A third proposed amendment alleges Park could not have discovered the first charge to his account until he received his written bank statement in the mail, around July 5, 2009. *Id.*, ¶ 8. Several paragraphs also add conclusory allegations that Webloyalty's practices were known to be deceptive and to violate the law. *Id.*, ¶¶ 16, 28, 33.

**Claims Arising from Alleged Deception Regarding the Nature of the Transaction**

Although Park identified a number of different statutes and theories, the essence of most of his claims is that the nature of the transaction he was entering into with Webloyalty was not properly or adequately disclosed, and that as a result he lost money.

At the outset, it is important to note that Park didn't correct many of the defects the Dismissal Order identified. For example, it refused to exclude from Park's claims any portion of the claims arising from the refunded money. The Ninth Circuit's ruling in *Berry v.*

*Webloyalty* was clear that a refund of charges moots a claim like this. *See* 517 Fed. Appx. 581, 582 (9th Cir. 2013). Park alleges that the fact that the effects of being deprived of the money (including inability to use the money advantageously) give rise to a cognizable injury. But if that were the case, *Berry*'s ruling would be meaningless, because all temporary deprivations of money result in the inability to use that money. Instead of correcting those defects, the motion accompanying Park's TAC argues the Court's order was wrong. To the extent it does this, it amounts to an unauthorized motion for reconsideration. Park briefed the motion to dismiss, and the Court considered those arguments. Motions for reconsideration are disfavored, and are not the place for parties to make new arguments they did not originally raise. *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir.2001); *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925–26 (9th Cir. 1988)). That is particularly true here, where the Court did not authorize or invite a motion for reconsideration. *See* Standing Order in Civil Cases, ¶ 4(j) ("No motion for reconsideration will be filed without leave of Court.") The purpose of the Court's order was to ascertain whether successful amendment was possible, or whether amendment would be futile.

The TAC depends heavily on conclusory allegations. This is most important with respect to statements and disclosures that appeared on the web pages Park looked at, and the import of those statements and disclosures. The TAC's allegations regarding the actual statements and appearance of the web page are rather thin. Instead, it focuses more on pointing out some of the page's statements and characterizing them as incomplete or misleading.

The TAC also fails to expand on allegations the Dismissal Order pointed out were insufficient. For instance, the TAC alleges that Park never noticed certain disclosures, did not realize he had been enrolled in a membership plan, and did not notice his bank account was being charged $12.00 each month. It is true that these are necessary allegations; Park may not claim he was deceived if he actually knew what he was agreeing to. But they are not sufficient. Park must allege facts showing not only that he did not know these things, but also that the disclosures provided to him were insufficient to put him on notice. Park's failure to

notice or read what was presented to him before he agreed to it does not mean he was deceived.

Webloyalty earlier provided copies of the web pages it says Park would have viewed. (Docket no. 28, Exs. A through E; *see also id.*, Ex. F (email Webloyalty represents was sent to Park, informing him of the terms of the agreement).) While the Court did not assume the authenticity of those exhibits, it did find them helpful, in illustrating the kinds of disclosures Park <u>could</u> have been given (*see* Docket no. 37 at 7:24–8:2 (explaining the usefulness of the exhibits), which would have sufficiently disclosed the nature of the transaction. (*See id.* at 5:19–7:14 (discussion of why disclosures were adequate).) To plead a claim, Park would need to allege facts that, if true, show he is entitled to relief, not merely that he <u>might</u> be entitled to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (1979). When confronted with the possibility that he was told multiple times he was enrolling in a membership program, Park cannot simply remain silent or change the subject. He must plead facts showing he was not told those things — or if he was, why the disclosures were ineffective. If the proffered web pages are consistent with the complaint and yet adequately and properly disclose the nature of the transaction, the complaint is inadequate. Park was told this, and the TAC should have pleaded facts showing that those exhibits could not be authentic — or, in other words, that he was not given the disclosures Webloyalty says he was given. In order to state a claim, the complaint would need to exclude the possibility that those exhibits are what Webloyalty claims they are. (*See* Docket no. 37 at 7:24–8:2.) The Court specifically pointed this out, and told Park it needed to be addressed. (Order Dismissing SAC (Docket no. 37) at 6:18–23, 7:24–8:2, 9:15–23, 10:8–13, 12:12–20.)

Park concedes that the exhibits are (or at least could be) authentic. (Pl.'s Response 5:12–15.) In effect, he has conceded that he was provided with the disclosures Webloyalty claims he was given, which the Court found would have been sufficient to put him on notice of the nature of the transaction and to defeat all his claims. In large part, Park's response

/ / /

/ / /

simply disagrees with the Court's determination; as noted, the Court is not reconsidering its earlier decision.

Park also argues that the "dynamic enrollment process" during which the disclosures were made resulted in deception. (*Id.* at 3:6–14.) But the TAC relies on facts and arguments the Court already considered. (*See* Docket no. 37 at 7:15–8:2 (rejecting as inadequate the generalized allegation that context could have rendered disclosures inadequate)). He also adds his own unwarranted conclusions about the effect of those allegations and asserts Webloyalty had the intent to deceive. (*See* TAC, ¶¶ 10–16, 18.)  In particular, paragraph 18 concludes that "[t]he webpage contained many prominent state[ment]s that Park was receiving a thank you gift from Gamestop, not an offer to enroll in a membership program." He then quotes statements he thinks show this. In fact, the statements cannot reasonably be construed as Park does. The Court agrees that the quoted statements said Park was receiving a $10 coupon, but they say nothing at all to suggest that there were no other terms Park needed to know, or that Park was not signing up for a membership program. The prominent disclosures Park now concedes were made to him were adequate to inform him of the nature of the transaction (*see, e.g.*, Docket no. 28-1, Ex.B (web page with disclosures indicated)), and nothing in the statements he quotes contradicts any of this.

The disclosures Park agrees he was given were prominent, clear, made repeatedly, and placed where they were likely to be seen by anyone signing up for the program. They made clear he would be charged for the continuing membership, and disclosed that he was dealing with an entity other than Gamestop, which undercuts his claim that he was harmed by the use of the "data pass" process or that it was unfair to him.  Although the Court's previous order addressed all these points, it bears repeating that Park's allegation that he did not notice or read them forms only part of a claim; it is not by itself sufficient to state a claim. If the disclosures were made, and were adequate to put Park on notice of the nature of the transaction — and the Court holds they were — the fact that he did not read or pay attention to them does not give rise to a claim.

/ / /

Park repeats his argument that Congress thought Webloyalty's practices were deceptive. He seeks discovery of documents produced to Congress in an effort to explore this further. As the Court determined before, even if Congress had made such a conclusion, it would not be binding on the Court in this case, nor would it render Webloyalty's practices actionable. (*See* Docket no. 37 at 4:12–5:2.) Furthermore, the allegations make clear Congress considered Webloyalty's actions over a long period of time, and in many different contexts. There is no reason to suppose Congress knew anything about what happened to Park, or that it had any opinion about whether he had been treated fairly. Congress may well have thought Webloyalty's practices, over time and as a general matter, were unfair, without knowing or taking into account any of the facts of his case  Park's allegations of scienter likewise do not salvage his claim. Nor does Park's conclusory allegation that "Webloyalty violated the rules the credit card companies had established for 'card-not-present' transactions" (TAC, § 16) help him.

Because Park concedes Webloyalty made the disclosures it claimed to have made, and because the Court has concluded that those disclosures adequately gave notice of the nature of the transaction, Park has no claim against Webloyalty regardless of Webloyalty's mental state at the time.

**Timeliness of Claims**

The first charge to Park's bank account was made on June 19, 2009. The order dismissing the SAC pointed out that, under the Electronic Funds Transfer Act's one-year limitations period, his claims were therefore time-barred as of June 20, 2010. Any tolling he became entitled to after that time would not salvage his claim.

Park now alleges that he did not receive his bank statement in the mail until at least July, 2009. Although it seems likely Park had access to an electronic statement before then, bearing in mind that it is clear he has an email account and uses the internet, the Court accepts his representation that he does not engage in online banking and had only a mailed paper bank statement. That being said, it is still possible he had access to all material facts on May 19, 2009, when he first viewed the enrollment page. (Order Dismissing SAC,

8:20–28.) At this stage, however, the Court accepts Park's amendment and determines the running of the statute of limitations is not apparent on the face of the complaint.

That being said, Park also seeks to add claims by Madelain Ginsberg, whose account was first charged in April, 2009 — at least one month and possibly up to two months earlier than Park's — though she did not actually discover the charges until 2012. Even though Park's claims may not be time-barred, it appears Ginsberg's are. Leave to amend to add Ginsberg's claims is being denied in any event, but the apparent time bar also supports denial. The TAC merely alleges that Ginsberg did not notice the charges until three years later, not that she could not reasonably have discovered them on her credit card statement right away. (TAC, ¶¶ 23–24.) It alleges Webloyalty charged her credit card once after she told them to stop, but that charge was removed, which moots any claim arising from it. (*Id.*, ¶ 25.)

**Discovery Request**

Park asks the Court for early discovery of documents Webloyalty produced to Congress. As the Court's earlier rulings and the discussion above make clear, Congress' conclusions and the basis for those conclusions is not at issue here. Congress might well have thought Webloyalty's practices were bad and the law ought to be amended to prohibit them. But that has no bearing on what disclosures were made to Park, or on this case. Early discovery is **DENIED**.

**State Law Claims**

The complaint identified both the presence of a federal question and the Class Action Fairness Act as giving rise to jurisdiction. The allegations merely say that the amount in controversy exceeds $5 million and there are "thousands" of putative class members. Now that it is clear the federal claims cannot proceed, Park might still bring claims under California and Connecticut law, but it is not clear what the value of those claims would be, and Park has not attempted to show that those claims exceed $5 million. Indeed, it is doubtful that they would, considering that each of the "thousands" of putative class members was charged $10 to $12 per month. Accounting for time bars, members could not have lost no more than a few hundred dollars each and many would have lost much less.

Webloyalty has its principal place of business in Connecticut, and Park has argued that some of Connecticut's consumer protection laws give rise to claims. Park also alleges Webloyalty has two offices in California, but does not allege what, if any, wrongful activity was done there. Unless there is some California nexus, California law does not govern transactions occurring entirely elsewhere, such as those between Webloyalty and putative class members living in the 49 other states. Claims arising under California law are therefore likely to represent only a fraction of all class claims. Even assuming the state law claims survive, Park has not invoked the Court's jurisdiction over them.

But it does not appear the state law claims can survive. The order of dismissal explained why they were being dismissed. (Docket no. 37 at 10:14–11:17.) Park now disagrees with this, and argues that even if Webloyalty's practices not violate federal law, they can still be unfair under state consumer protection law. He refers to this as the "unfairness prong" analysis. While this is true, Park's general unfairness claims remain inadequately pled. He has not pleaded facts showing that, although he was told all relevant details about the transaction, it was nevertheless unfair to him. It is certainly possible this type of transaction might have been unfair to other putative class members. But at this point, the issue is whether Park has adequately pled his own claim; he must do that before he can represent anyone else.

Because Park was cautioned about the facts he would need to plead, and has failed to do so, it appears he cannot successfully amend. In cases "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotation marks omitted).

**Leave to Add Madelaine Ginsberg as Plaintiff**

In addition to the problem that Ginsberg's claims may be time-barred, her theories of recovery fare no better than Park's, and for the same reasons. Furthermore, because she is not a California resident she cannot represent either of the two California classes (even

assuming there are any valid claims under California law). And finally, waiting until the case was well over two years old and the complaint had been dismissed amounts to undue delay. *See Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (explaining that undue delay and/or futility are reasons to deny leave to amend). *See also Union Pacific R. R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) (explaining that, generally, leave to add claims is granted more freely than leave to add parties).

**Conclusion and Order**

For the reasons set forth above, the Court finds Park cannot successfully amend. The defects in his complaint were pointed out to him and he was directed to show that he could remedy them, yet he has failed to do so. Leave to add Madeline Ginsberg would be futile and, at this point, would amount to undue delay. The motion for leave to amend is **DENIED** and this action is **DISMISSED**. It is **DISMISSED WITH PREJUDICE** as to Park's federal claims, and **DISMISSED WITHOUT PREJUDICE** as to his state law claims and the putative class's claims. Madeleine Ginsberg's claims are not yet part of this action (except insofar as she may be part of the putative class), and so need not be dismissed specifically. But denial of leave to add her as a plaintiff should not be construed as an adjudication of any of her claims.

**IT IS SO ORDERED**.

DATED: June 19, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge