UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN PARK, on behalf of himself and all others similarly situated,<br><br>                            Plaintiff,<br><br>v.<br><br>WEBLOYALTY.COM, INC., a Delaware corporation,<br><br>                            Defendant. | Case No.: 12CV1380-LAB(JMA)<br><br>**ORDER RE: JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE [DOC. NO. 87]** |

    Plaintiff Kevin Park ("Park") and Defendant Webloyalty.com, Inc. ("Webloyalty") have filed a Joint Motion for Determination of Discovery Dispute, in which they raise three categories of disputes arising from Park's responses ("Responses") to Webloyalty's first set of document requests ("Requests").[1]

//

---

[1] The undersigned's Chambers Rules require a party to bring any motion to compel "within forty-five (45) days of the date upon which the event giving rise to the dispute occurred," Park's Responses to Webloyalty's document requests were served on December 4, 2017. Pursuant to the Chambers Rules, the motion should have been filed by January 18, 2018, absent any extension. Although an extension was not sought and the motion was not filed until February 8, 2018, because an objection has not been made as to timeliness, the Court will address the parties' arguments on their merits.

1

## I. Introduction & Background

Park has brought this putative class action alleging Webloyalty operates an online marketing scam that preys on unsuspecting consumers through partnerships with established online retailers. [Doc. No. 66. Third Amended Complaint ("TAC").] Park contends Webloyalty tricks consumers into enrolling in its fee-based membership reward programs as they complete purchase transactions from these established online retailers. Webloyalty obtains the consumers' credit or debit card and billing information not from the consumers themselves, but rather through a practice that is commonly referred to as "data pass." Thereafter, Webloyalty uses this information to charge the consumers monthly membership fees.

In Park's case, he purchased a gift certificate online from Gamestop.com in May 2009. After entering his credit card information, he saw an offer for a coupon to save on his next purchase. Park clicked on the offer, and was directed to a new window which instructed him to enter his email address and click on an acceptance button. Believing he was providing this information in order to receive the promised coupon, Park entered his email address and clicked on the acceptance button. At this point, Park was enrolled in Webloyalty's membership-fee based monthly subscription program known as Complete Savings. Park did not re-enter his billing information for this subscription and claims he was not even aware he had been redirected away from the website Gamestop.com. Unbeknownst to Park, his billing information was shared with Webloyalty via data pass. The first charge by Webloyalty was made one month later, on June 19, 2009.

Park alleges that in April 2011 he discovered unauthorized charges totaling $264 were made to his bank account by Webloyalty. He requested a refund, to which Webloyalty responded by granting him a partial refund of $48. Thereafter,

Park brought this putative class action, which comprises five sub-classes consisting of all persons nationwide and in the state of California who did not directly provide their billing information to Webloyalty, but who were charged for a subscription-based program at any time since October 1, 2008 (Classes A & B) and December 29, 2010 (Classes C & D) and all persons nationwide who had their debit card charged or bank account debited by Webloyalty for a subscription-based program at any time since October 1, 2008. *Id.*

## II. Legal Standard

Generally, a party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1). "Information within the scope of discovery need not be admissible in evidence to be discoverable." *Id.* "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998). The moving party, on the other hand, "carries the burden of informing the court: (1) which discovery requests are the subject of [its] motion to compel; (2) which of the defendants' responses are disputed; (3) why the responses are deficient; (4) the reasons defendants' objections are without merit; and (5) the relevance of the requested information to the prosecution of his action." *Valenzuela v. City of Calexico*, 2015 WL 926149 at *1 (S.D. Cal. Mar. 4, 2015); *Townsend v. Imperial Cnty.*, 2014 WL 2090700 at *1 (S.D. Cal. May 16, 2014); *see also Ioane v. Spjute*, 2014 WL 3563301, at *3 (E.D. Cal. July 17, 2014).

## III. Discussion

The parties' dispute involves Park's Responses to Request Nos. 9, 11, 12, 13, 14, 15, and 18 and concerns three categories of information. The Court addresses these Responses in the order they are discussed by the parties.

### A. Document Request No. 9

Request No. 9 seeks documents concerning the terms of Park's engagement of class counsel, including documents related to any benefits he expects to receive in his role as class representative beyond his pro-rata share of the class recovery.[2] Park objected to this Request on the ground it seeks information that is not relevant to the action.[3] Webloyalty argues Park's objection is not well-based, and that his retainer agreement with counsel is relevant to whether conflicts exist between him and the purported classes, and whether he can adequately represent the purported classes. Both parties rely on *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, (9th Cir. 2009) and subsequent cases interpreting that decision in support of their respective arguments.

*Rodriguez* involved a $49 million class action settlement between BAR/BRI class members and West Publishing/Kaplan Inc. Lawyers for the class sought to collect up to $12.25 million in fees as part of the settlement. The settlement was challenged on various grounds, one of which involved the retention agreements between five of the seven class representatives and their counsel. These five

---

[2] "Request No. 9: Documents sufficient to show the terms of Your engagement of the counsel seeking to represent any approved class in this Action, including without limitation documents sufficient to show any benefit You expect to receive for participating in this Action apart from Your pro rata share of any class recovery."

[3] Although Park also objected to the Request on the basis it calls for documents protected by the attorney-client privilege, this objection was later dropped. In the Joint Motion, Park does not argue his retainer agreement should be withheld on this basis, and instead argues it should not be produced because it is not relevant.

4

class representatives had entered into upfront retention agreements with their attorneys by which they would be awarded incentive agreements on a sliding scale basis, from a potential floor of $10,000 (if the case settled for $500,000 or more) to a potential ceiling of $75,000 (if the case settled for $10 million or more). The Ninth Circuit affirmed the settlement agreement, but determined these incentive agreements created a conflict because the class representative's interests were different from those of the remainder of the class, and that the retainer agreements should have been disclosed at the class certification stage. *Rodriguez*, 563 F.3d at 959.

Webloyalty suggests *Rodriguez* establishes that retention agreements are always discoverable at the class certification stage, even when there is no indication an unusual incentive structure or conflict of interest exists, citing to two recent cases that can be interpreted to support that position. *See Gusman v. Comcast Corp.*, 298 F.R.D. 592, 600 (S.D. Cal. 2014) (finding plaintiff's retainer and fee agreement with counsel was relevant to the Rule 23(a)(4) analysis of whether Plaintiff was an adequate representative of the class and hence a proper subject for discovery); *Haghayeghi v. Guess?, Inc.*, 2016 WL 9526465, at *1 (S.D. Cal. Mar. 21, 2016) (*citing Gusman* and compelling plaintiff to produce the retainer agreement because it is "relevant to whether Plaintiff would adequately protect the interests of the class.").

This interpretation of *Rodriguez*, however, is too broad. Although *Rodriguez* states the existence of an incentive agreement is relevant at the class certification stage, it does not stand for the broad proposition that all fee agreements between named plaintiffs and plaintiffs' counsel should be discoverable without any reason to think there is a potential conflict. A more nuanced and, in the Court's view, correct interpretation of *Rodriguez* can be found in *In re Google AdWords Litigation,* 2010 WL 4942516, at *4-5 (N.D. Cal.

5

Nov. 12, 2010). *Google AdWords* was a class action in which the defendant sought to compel production of the plaintiffs' fee agreements with their counsel, relying on *Rodriguez*. The court rejected the premise *Rodriguez* stands for the proposition that fee arrangements between plaintiffs and counsel are discoverable without any reason to think there is a potential conflict. The defendant argued the plaintiffs' fee agreements should be produced because deposition testimony established one of the class representatives had a prior professional relationship with one of the law firms that was representing a different plaintiff and also because members of that law firm had prior professional and personal ties with the principal for its client, who was also a class representative. Conceding that a plaintiff's prior relationship with counsel did not, in and of itself, create a conflict, the defendant argued it should have the opportunity to check and see if a *Rodriguez*-type situation existed. The court rejected that argument, finding the professional relationships and apparent friendship of some of the plaintiffs with one of law firms seeking to represent the class was too speculative a reason to make the fee agreements relevant. *Id.*; *see also Larsen v. Coldwell Banker Real Estate Corp., et al,* 2011 WL 13131127 at *3 (C.D. Cal. Oct. 4, 2011) (denying motion to compel fee agreements where there was no evidence of any suspect relationship or conflict between the proposed class representatives and counsel); *Carlin v. Dairyamerica, Inc.* 2017 WL 4224940 at *3-4 (E.D. Cal. Sept. 22, 2017) (also denying motion to compel plaintiffs' fee agreements where there was no evidence of any suspect relationship or conflict between the proposed class representatives and counsel); *In re Front Loading Washing Machine Class Action Litigation*, 2010 WL 3025141, at *4 (D.N.J. July 29, 2010) (denying motion to compel retainer agreements because they were not relevant or necessary and the requested information could be obtained through deposition); *Mitchell-Tracey*

6
12CV1380-LAB(JMA)

*v. United Gen'l Title. Ins. Co.*, 2006 WL 149105, at *1-3 (D. Md. Jan. 9, 2006) (finding fee agreement documents irrelevant to class certification, reviewing cases, and characterizing defendant's relevance arguments as "bereft of any supporting authority (or basis in fact) and suggest[ive] of a fishing expedition that this court will not endorse.").

Here, there is no evidence of any suspect relationship or conflict between Park and class counsel. Webloyalty has not articulated any reason to believe Park's retainer agreement contains the type of incentive agreement present in *Rodriguez*, nor does it offer any other reason to suspect a conflict exists between Park and the putative class members. Furthermore, Park's counsel has represented that no such incentive agreement exists and that Webloyalty's counsel will be permitted to question Park about his retention agreement and explore whether there is any incentive agreement between him and his counsel during his deposition. Accordingly, under these circumstances, there is no reason to believe Park's retention agreement is relevant and, therefore, Webloyalty's motion to compel is DENIED with respect to Request No. 9

**B. Document Request No. 15**

Request No. 15 seeks "statements for the debit card used in connection with [Plaintiff's] enrollment in any Webloyalty program or any other good or service purchased through data pass." Although the dispute regarding this Request was originally broader, since the filing of the parties' discovery motion, Park has produced all the statements at issue; however, the statements were produced with the merchant name and transaction amount redacted for every transaction other than the Webloyalty charge. [Doc. No. 90, Joint Supplement Regarding Joint Motion for Determination of Discovery Dispute.] Webloyalty contends these statements should be produced without redaction because Park has put his shopping habits at issue, whereas Park points out the account is

7

1 shared with his wife, and argues information about transactions other than the
2 charges by Webloyalty is not relevant and is an invasion of privacy.

3 With respect to Park's relevance based objection, the Court notes Park's
4 claims are predicated on the theory that Webloyalty's use of data pass to obtain
5 consumers' billing information is an inherently deceptive practice. [Doc. No. 66,
6 TAC ¶¶ 1, 11-14, 28-32, 54-60.] He also claims he did not detect the monthly
7 Webloyalty charges on his statements because they were too small ($12 per
8 month). [*Id.* ¶ 11.] In claiming he was deceived by Webloyalty's disclosures, Park
9 has put his "shopping habits at issue," making his debit card statements "relevant
10 to the claims and defenses in this action." *See Sperling v. Stein Mart, Inc.*, 2017
11 WL 90370, at *4 (C.D. Cal. Jan. 10, 2017) (granting defendant-retailer's motion to
12 compel four years of all credit card statements because plaintiff had put her
13 shopping habits at issue by alleging she was deceived by retailer's price tags in
14 violation of California's Unfair Competition Law). Information about transactions
15 that appear on Park's statements would allow Webloyalty to evaluate Park's
16 experience, if any, with other purchases made by data pass, as well as his claim
17 the monthly Webloyalty charges escaped his notice because they were too small
18 in the context of all other charges that appear on his statements.

19 Park also contends Request No. 15 seeks a broader dissemination of
20 personal information than is necessary for the purposes of the litigation and,
21 therefore, is an invasion of privacy rights. He cites no authority in support of this
22 position.

23 Federal courts recognize a constitutional right to privacy. *Stallworth v.*
24 *Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. Dec. 21, 2012) (citing *Whalen v. Roe*,
25 429 U.S. 589, 599 (1977)). Federal courts also consider privacy rights protected
26 by state constitutions or statutes. *Soto v. City of Concord*, 162 F.R.D. 603, 616
27 (N.D. Cal. July 17, 1995). To evaluate privacy objections under either federal or

8

state law, the Court must balance the party's need for the information against the individual's privacy right. *Tierno v. Rite Aid Corp.*, 2008 WL 3287035, at *3 (N.D. Cal. July 31, 2008).

California extends a "zone of privacy" to "prevent disclosure of ... personal financial information." *Endsley v. Travelers Property Cas. Ins. Co.*, 2015 WL 2380657, at *4 (E.D. Cal. May 18, 2015), citing *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 316, 187 Cal.Rptr. 4 (1982). Thus, before compelling discovery, a court should consider "the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections urged by the party resisting disclosure, and ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances." *Id.*, citing *Fortunato v. Superior Court*, 114 Cal.App.4th 475, 481 (2003). As explained above, the financial information sought is relevant to the litigation in that it will substantiate (or undermine) the claims and defenses asserted by the parties. When evidence is particularly important to a claim or defense, a party's right to discovery of that evidence is more likely to outweigh competing privacy claims. See *Denari v. Superior Ct. (Kern County), 215 Cal. App. 3d 1488, 1501 (1989).*

Park generally argues the information sought is private, but does not explain how its disclosure would be harmful to him, or why any such harm would not be mitigated by producing this information subject to a protective order. In weighing his privacy interests against Webloyalty's right to obtain documents that are relevant to the claims and defenses at issue, the balance tips in favor of disclosing information about his shopping habits. See *Endsley*, 2015 WL 2380657, at *4 (holding "the significance of the documents to the litigation outweighs Plaintiff's privacy concern" "given the (1) significant relevance to the

litigation; (2) unavailability of the information from other sources; (3) ability of a protective order to shield Plaintiff's information; and (4) lack of articulation on Plaintiff's part as to how he is harmed by the disclosure.")

Park's wife, however, shares the account with him. She is not a party to this case, and her shopping habits are not at issue. Information about transactions she initiated, therefore, is only relevant to the extent that Park contends he did not detect the Webloyalty charges because they were too small in the context of all other charges that appear on his statements. Given the lesser relevance of information about transactions authorized by Park's wife, as opposed to Park, and the fact that these transactions implicate the privacy rights of a third-party, the balance tips in favor of not disclosing this information.

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART Webloyalty's motion to compel with respect to Request No. 15. Park shall produce these documents without redaction, except for information about transactions solely initiated or authorized by his wife. The Court previously entered a protective order [Doc. No. 81], pursuant to which Park may designate these documents as confidential and limit their use and disclosure.

### C. Document Request Nos. 11-14, 18

Requests No. 11-14 and 18 seek documents relating to Plaintiff's relationship with GameStop – the retailer he "believ[ed] that he was providing his email address to" when he enrolled in Webloyalty's program.[4] [Doc. No. 66, TAC

---

[4] Request No. 11: All documents and communications referencing and/or related to GameStop, whether or not dated within the Relevant Period, including documents relating to Your alleged prior dealings with GameStop, from which You supposedly came to trust GameStop, as alleged in paragraph 18 of the Complaint.

Request No. 12: All documents and communications relating to any purchase You made from GameStop, whether or not dated within the Relevant Period.

¶ 16.] Park has agreed to produce any documents or communications related to the GameStop coupon he received for joining Webloyalty's Complete Savings Program, but objects to producing any further information regarding his history with GameStop on the basis these Requests are overly broad and seek information that is neither relevant nor proportional to the needs of the case. Because Park alleges he thought he was accepting a coupon offer from GameStop, a retailer with whom he had previously shopped and trusted, Webloyalty contends it needs to assess that relationship to determine whether and how Park's prior purchases and communications with GameStop may have precluded him from understanding he was enrolling in Webloyalty's program.

These Requests are vastly overbroad, in that they seek documents pertaining to any and all of Park's interactions and/or purchases with GameStop without any restriction as to time or similar types of transactions as the one that was the genesis of this case. Park has not put his relationship with GameStop at issue so as to warrant a wholesale exploration into each and every interaction he has had with GameStop over the course of his life. The information sought is

/ /

---

Request No. 13: All documents constituting or relating to communications with GameStop, including, but not limited to, email messages received by Your email accounts and/or email service provider, whether or not dated within the Relevant Period.

Request No. 14: Any and all documents and communications relating to telephone calls between You and GameStop, including telephone bills, call logs, and notes, whether or not dated within the Relevant Period.

Request No. 18: All documents and communications relating to Your enrollment in any GameStop customer loyalty program, rewards program, discount program, membership program, or similar program offered by GameStop, including, but not limited to, the GameStop PowerUp Rewards Program, whether or not dated within the Relevant Period.

11

irrelevant and is certainly not proportional to the needs of the case. Webloyalty's motion to compel further Responses to these Requests is, therefore, DENIED.

**IT IS SO ORDERED.**

Dated: April 30, 2018

_____
Honorable Jan M. Adler
United States Magistrate Judge